UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
FEB 2 3 2008
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | |
|---|---|
| GREGORY WEBB, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No. 05-0427 (RJL) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION
(February 25, 2008) [#27]

Plaintiff, Gregory Webb ("Webb") brought this tort claim against defendant, the United States, pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2401(b) ("FTCA"). Before the Court is Defendant's Motion for Judgment on the Pleadings, or Alternatively, for Summary Judgment. After consideration of the parties' pleadings, the relevant law and the entire record herein, the Court GRANTS defendant's motion.

### BACKGROUND

Webb brought this FTCA claim for injuries arising from a November 17, 1998, arthroscopic "Bankart" repair surgery performed at the Veterans Affairs Medical Center ("VAMC") in Washington, DC ("DC VAMC"). (Def.'s Statement of Material Facts to Which There Is No Genuine Dispute[1] ("Def.'s Stmt.") ¶ 1.) The surgery was performed

---

[1] Webb incorporated the Defendant's Statement of Material Facts to Which There is No Genuine Dispute into his Statement of Material Facts Not in Dispute. (Pl.'s Statement of Genuine Issues, and Pl.'s Statement of Material Facts Not in Dispute ("Pl.'s Stmt.") at 1.)



to treat a prior shoulder injury Webb suffered while serving in the military and for which he was medically discharged on November 21, 1985. (Compl. ¶¶ 6-7.)

After the surgery, Webb continued to experience pain in his shoulder for which he sought treatment on multiple occurrences at the DC VAMC. (Def.'s Stmt. ¶¶ 2-7.) He reported feeling as if "something [was] moving in his shoulder" (*id.* ¶ 2) and experiencing "decreased range of motion" (*id.* ¶ 4). Sometime around November 1998, a technician told Webb that his problems might be associated with the pin inserted in his shoulder during the surgery. (Pl.'s Stmt. ¶ 2.) When Webb "asked his physician about this possibility [he was] told that it could not be an issue." (Pl.'s Stmt. ¶ 2.)

On April 27, 1999, Webb sought a second opinion at the Baltimore VAMC Orthopedic Clinic. (Pl.'s Stmt. ¶ 1.). The Baltimore VAMC recommended additional CT scans "to check the position of the Mitek [suture anchor] and general posture of the shoulder." (Pl.'s Stmt. ¶ 1.) In a follow-up report on June 16, 1999 a VAMC medical professional indicated that the CT scan "show[ed] no gross abnormalities." (Compl. ¶ 17; Def. Mot. to Dismiss, Ex. 10.)

Webb then returned to the DC VAMC for further treatments. Medical records from August 1999 indicate that "[s]ince his [November 1998] procedure he has had progressively worsening range of motion and pain" and that his "pain is at the site of the surgical scar." (Def.'s Mot. for J. on the Pleadings, or Alternatively, for Summ. J. ("Def.'s Mot."), Exs. 1, 2; Def.'s Stmt. ¶¶ 5-6.) By September 30, 1999, the VAMC told Webb his options were limited. He was informed that no additional conservative treatment options remained, but that other options, such as fusion, were a possibility.

2

(*See* Pl.'s Opp'n to Def.'s Mot. to Dismiss, Ex. 12-13; *see also* Pl.'s Opp'n to Def.'s Mot. for J. on the Pleadings or Alternatively, for Summ. J. ("Pl.'s Opp'n") at 3 (citing Pl.'s Opp'n to Def.'s Mot. to Dismiss, Exs. 1-18).)

Nevertheless, Webb continued to seek treatment from the VAMC. The medical records indicate that Webb was again "told the same information about the [potential] problem with the pin in his] shoulder that the technician had related over one year earlier" at his January 18, 2000 appointment. (Def.'s Reply to Pl.'s Opp. to Def.'s Mot. at 3 (citing Pl.'s Consent Mot. to File Exhibits Under Seal, Ex. 13, Progress Notes.))

On March 27, 2001, Webb visited an orthopedist at the West Haven, Connecticut VAMC who informed him that he would need surgery to remove an "inferior suture anchor from the 1998 'Bankart' procedure." (Pl.'s Stmt. ¶ 3). The summary of the procedure was stated as follows: "It was decided in consultation with [Webb] that the best thing to do would be to arthroscopically evaluate the joint and remove the hardware if that proved to be the offending agent. . . . Intraoperatively there was noted that there was a metal suture that was plowed into the inferior glenoid and causing significant irritation and erosion on the inferior portion of the articular humeral head. The screw was removed as planned and postoperatively he was stable." (Pl.'s Stmt. ¶ 4.) This procedure took place on May 1, 2001. (*Id.*) On May 10, 2001, an orthopedic physician summarized the May 1 procedure and noted that "[p]atient intraoperatively found to have significant decrease in ROM [range of motion] with palpable locking and catching." (*Id.* ¶ 5.)

On March 13, 2003, less than two years after Webb's surgery at the West Haven, Connecticut VAMC, the Department of Veteran's Affairs ("VA") received the plaintiff's

administrative claim. (Def.'s Stmt. ¶ 8). After responding to defendant's March 19, 2003 request for additional information, Webb heard nothing further. (Compl. ¶ 26.) Subsequently, he filed the present action on March 2, 2005.

The United States filed a motion to dismiss on the grounds that the Court lacked subject matter jurisdiction due to Webb's failure to comply with the statute of limitations. (Def.'s Mot. to Dismiss.) The Court denied the United States' motion on January 3, 2006. Now, after completion of fact discovery, the United States moves for judgment on the pleadings, or alternatively for summary judgment, on similar grounds.

## DISCUSSION

### I.   Legal Standards[2]

Summary judgment is appropriate when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and the Court draws all reasonable inferences regarding the assertions made in a light favorable to the non-moving party, *Biodiversity*

---

[2] Defendant moved under both Rule 56, summary judgment, and Rule 12(c), judgment on the pleadings. Under Rule 12(c), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In considering a motion for judgment on the pleadings, the court, "must accept the nonmovant's allegations as true and should view the facts in the light most favorable to the nonmoving party." *Dale v. Executive Office of the President*, 164 F. Supp 2d. 22, 24 (D.D.C. 2001). The court may decide based solely on the complaint, or if necessary, on the complaint "supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* (citing *Herbert v. National Academy of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992)). The court should grant the motion if "the movant is entitled to judgment as a matter of law." *Id.* Because both parties reference and include citations to the record amassed during discovery, the Court will decide the present motion as a motion for summary judgment.

*Conservation Alliance v. U.S. Bureau of Land Mgmt.*, 404 F. Supp. 2d 212, 216 (D.D.C. 2005) (citing *Flynn v. Dick Corp.*, 384 F. Supp. 2d 189, 192-93 (D.D.C. 2005)). "[W]hen ruling on cross-motions for summary judgment, the Court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed." *Barr Labs., Inc. v. Thompson*, 238 F. Supp. 2d 236, 244 (D.D.C. 2002) (citing *Rhoads v. McFerran*, 517 F.2d 66, 67 (2d Cir. 1975)). Whether a genuine issue exists is, in essence, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 252-52. Whether a fact is material will depend on the substantive law. *Id.* at 248.

## II.     Statute of Limitations

The United States and its agencies are shielded from tort actions for damages unless the United States waives its sovereign immunity. *See United States v. Kubrick*, 444 U.S. 111, 117-18 (1979). Congress has waived sovereign immunity for tort cases via the FTCA, which provides, in relevant part:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within *two years after such claim accrues* or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b) (emphasis added). Thus, the waiver of sovereign immunity is premised on the plaintiff complying with the two-year statute of limitations, which begins to run when the "claim *accrues*." *See id.* (emphasis added). This waiver of sovereign

immunity is purposely limited. The Supreme Court has cautioned courts that "in construing the [FTCA's] statute of limitations, which is a condition of that waiver, we should not take it upon ourselves to extend the waiver beyond that which Congress intended." *Kubrick*, 444 U.S. at 117-18. Courts must take care not to "undermine the purpose of the limitations statute, which is to require reasonably diligent presentation of tort claims against the Government," despite the possibility of seemingly harsh results. *Id.* at 123.

The statute of limitations begins to run when the claim first *accrues*. Federal law governs when a claim "accrues" under the FTCA. *See Sexton v. United States*, 832 F.2d 629, 633 n.4 (D.C. Cir. 1987). What constitutes accrual of a cause of action is a question of law, even though the specific moment when accrual occurs is generally a question for the jury. *See Smith v. Brown & Williamson Tobacco Corp.*, 3 F. Supp. 2d 1473, 1475 (D.D.C. 1998) (citing *Diamond v. Davis*, 680 A.2d 364, 370 (D.C. 1996)). Accordingly, a court may dismiss a FTCA claim on statute of limitation grounds only if "no reasonable person could disagree on the date" on which the cause of action accrued. *Kuwait Airways Corp. v. Am. Security Bank, N.A.*, 890 F.2d 456, 463 n.11 (D.C. Cir. 1989).

Under the FTCA, a claim accrues when the plaintiff "has discovered both his injury and its cause," regardless of whether the plaintiff knows the injury was negligently inflicted. *Sexton*, 832 F.2d at 633 (citing *Kubrick*, 444 U.S. at 120). Courts measure discovery of the injury by "when the claimant has discovered, or in the exercise of reasonable diligence should have discovered, the act constituting the alleged malpractice." *Kubrick*, 444 U.S. at 115. Thus, a plaintiff needs to only be "armed with

the facts about the harm done to him" such that he can "protect himself by seeking advice in the medical and legal community." *Id.* at 123. This standard confers upon the plaintiff "a duty to inquire into the unknown cause of a known injury." *In re Swine Flu Immunization Products Liability Litigation*, 880 F.2d 1439, 1443 (D.C. Cir. 1989) (construing *Sexton*, 832 F.2d at 637); *see also Kerstetter v. United States*, 57 F.3d 362, 364 (4th Cir. 1995) (holding that actual knowledge is not required for claim accrual if the plaintiff "would have become aware through the exercise of due diligence" of the existence of an injury and its cause). This duty exists even when discovery of the "causal connection" is deterred by the plaintiff's belief that "natural causes" likely caused the ultimate injury. *See Sexton*, 832 F.2d at 633.

Here, Webb argues that he brought suit within the statute of limitations because it did not begin to run until he underwent surgery at the West Haven VAMC, since it was only then that the allegedly negligently-placed suture anchor was discovered "intraoperatively."[3] (Pl.'s Opp'n at 8.) Defendant, on the other hand, argues that Webb should have known that his pain was caused by the November 1998 surgery by no later than the end of 1999 since his pain did not subside. (Def.'s Mem. at 7-8.) For the following reasons, the Court holds that a reasonable person in Webb's position would have known enough facts regarding the possible cause of his pain by the end of 1999, but

---

[3] Webb's argument that summary judgment is inappropriate because the date on which Webb knew or should have known the cause of his pain is a disputed question of material fact is without merit. (Pl.'s Opp'n at 2.) The parties agree on the record, that is, on the reports from the various VAMC's visited by Webb. They disagree, however, as to the legal significance of those facts. That does not, however, constitute a dispute of material fact that would preclude summary judgment.

at the latest by January 18, 2000, which was more than two years before he filed his claim in 2003.

There is no dispute that between the November 1998 surgery and the end of 1999 (and indeed through 2000), Webb visited multiple VAMCs on numerous occasions complaining about increased pain and decreased range of motion in his shoulder. His persistent pain and belief that his treatment was not working armed him with enough information to seek out legal or medical advice regarding whether he had a tort claim. *See Sexton*, 832 F.2d at 636 ("Plaintiffs . . . need only seek information outside the hospital to *evaluate* the known facts, in order to find out whether the doctors omitted a clearly superior alternative treatment." (emphasis in original)). In fact, Webb was given information that his injury might have been caused by negligence. For example, on two occasions medical personnel told Webb that the placement of the pin might be causing his pain. That a doctor told him the pin could not be the problem did not absolve Webb from inquiring further into his rights. *See Green v. United States*, 765 F.2d 105, 105 (7th Cir. 1985) (holding a "reasonably diligent claimant [would have sought] advice in the medical and legal community" upon being "informed at least twice that his injuries were caused by" the treatment in question and upon experiencing severe injuries).[4] This knowledge places Webb in a different position from those plaintiffs who tried to

---

[4] Plaintiff relies heavily on *Dawson v. Eli Lilly & Co.*, 543 F. Supp. 1330 (D.D.C. 1982), in arguing that Webb had no reason to know of a possible cause of action. By its own admission, however, that case was decided under the more lenient standard applicable under District of Columbia law, rather than the FTCA. *See id.* at 1337 ("The question before us, however, is not what would be decided under the Federal Tort Claims Act . . . but what would be decided under District of Columbia law."). Because statute of limitations questions under the FTCA are governed by federal and not state law, that case is inapplicable. *See Kubrick*, 444 U.S. at 117-18.

investigate the cause of their injuries but were repeatedly informed that the cause could not be determined. *See In re Swine Flu Immunization*, 880 F.2d at 1441 (finding plaintiff satisfied duty to inquire into the cause of her injuries where she "consult[ed] several different doctors" who informed her that they did not know the cause of her problems).

Additionally, Webb's belief that his pain was an expected consequence of the surgery and that doctors' deflected his belief that the surgery caused his pain does not justify him sitting on his rights for over three years. *See Sexton*, 832 F.2d at 633 (holding that claimant's belief that "detection of the causal connection [between the injury and negligence was] thwarted" by his belief that the injury was expected did not change that claimant had the "critical facts" relating to the basic nature of the treatment and should have taken a "reasonably diligent investigation to determine whether a cause of action may lie"). To the contrary, the record reflects that Webb was not thwarted in his investigation efforts but rather sought to inquire further, in the form of a second opinion from the Baltimore VAMC. It is irrelevant, however, that the Baltimore VAMC did not determine that a suture caused his injury. *See Kubrick*, 444 U.S. at 124 ("If [the plaintiff] fails to bring suit because he is incompetently or mistakenly told that he does not have a case, we discern no sound reason for visiting the consequences of such error on the defendant by delaying the accrual of the claim until the plaintiff is otherwise informed or himself determines to bring suit.").[5]

---

[5] In opposition to the United States' motion to dismiss, Webb argued that the statute of limitations should be tolled under the doctrine of continuous treatment. (Pl.'s Opp'n to Def.'s Mot. to Dismiss at 17.) He appears to have abandoned this argument in his opposition to the United States' current motion.

Statutes of limitation oftentimes render harsh results. They require would-be plaintiffs to diligently police their rights. Webb's persistent and increasing pain, coupled with the information from the technician regarding possible problems with the pin, was enough for a reasonably diligent claimant to have sought advice in the medical or legal community prior to March 2001. *See Green v. United States*, 765 F.2d 105, 108 (7th Cir. 1985). Therefore, because Webb's claim accrued prior to March 13, 2001, his lawsuit is time-barred.

## CONCLUSION

Accordingly, for the foregoing reasons, the Court GRANTS Defendant's Motion for Judgment on the Pleadings, or Alternatively, for Summary Judgment. An Order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge